UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                                          3:06-cr-204-J-33MCR

ROBERT C. BROWN

_____

## ORDER

This matter comes before the Court on Defendant Robert Brown's Motion for New Trial (Doc. #136), filed on August 31, 2006.  The government filed a response (Doc. #152) on September 27, 2006.  Hunter requested to adopt Brown's motion (Doc. #138).  The Court granted that request (Doc. #156).  For the reasons stated below, the motion is denied.

**I. Standard**

A new trial pursuant to Federal Rule of Criminal Procedure 33 may be granted on either of two grounds.  United States v. Ramos, 179 F.3d 1333, 1336 n.1 (11th Cir. 1999).  A new trial may be granted "in the interest of justice."  Fed. R. Crim. P. 33(a).  A new trial may also be granted on the basis of newly discovered evidence.  Fed. R. Crim. P. 33(b)(1).

**II. Analysis**

Brown does not allege any newly discovered evidence.  Thus, the Court examines whether the interest of justice requires a new trial.  The Court finds that it does not.

Brown contends that the Court committed multiple errors in the course of the trial.  In addition to Court error, Brown also claims

1

that the evidence was manifestly insufficient to support the jury's verdict.  The Court separately examines these arguments.

## 1.  Court Error

Brown asserts that the Court made several errors.  Brown designated the errors in separate paragraphs.  The Court will address each argument, using the same lettering utilized by Brown in his motion.  A majority of Brown's arguments were raised in pretrial motions.  The Court entered written orders on many of these motions.  Brown "adopts and incorporates by reference . . . the memoranda of law and oral arguments made with respect to each error enumerated [in the motion]."  (Doc. #136 at 1.)  Thus, the Court will address many of Brown's argument by reference to earlier entered orders.

### A.  Motion to Dismiss

Brown claims that the Court erred in denying Brown's motion to dismiss for violation of the Speedy Trial Act pursuant to <u>Zedner v. United States</u>, 126 S.Ct. 1976 (June 5, 2006).  Brown argues that the indictment returned against Brown in a prior, identical case should have been dismissed with prejudice.  Brown raised the same arguments in a pretrial motion (Doc. #168, 3:05-cr-105). The Court addressed these arguments in a written order (Doc. #233, 3:05-cr-105).  In that order, the Court provided:

> Pursuant to 18 U.S.C. § 3162(a)(2), the Court may dismiss the case either with or without prejudice.  Determining the nature of the dismissal, the Court "shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this

2

chapter . . . and on the administration of justice." See 18 U.S.C. § 3162(a)(2).   Taking these factors into account, the Court finds that this case is properly dismissed without prejudice.

Defendants are charged with not one but twenty five serious offenses.  The charges stem from the defendants' alleged scheme to defraud insurance providers. Allegedly, the scheme resulted in the improper appropriation of approximately 2.5 million dollars.  The Court considers these crimes serious offenses. Moreover, in their response, the defendants do not contest the seriousness of the crimes charged.  Accordingly, the Court finds that this factor weighs in favor of dismissal without prejudice.

Additionally, the facts and circumstances favor a dismissal without prejudice.  In this case, the defendants moved for several continuances in order to effectively prepare for trial.  The government only moved for one continuance, in a joint motion with the defendants. United States v. Williams, 314 F.3d 552, 559 (11th Cir. 2002)(taking into account who contributed to and who benefitted from the delay).  Accordingly, this factor weighs in favor of dismissal without prejudice. Moreover, the government was under the belief that continuances were valid and properly tolled the running of speedy trial, a reasonable pre-Zedner assumption.

Finally, the Court considers the impact of reprosecution on the administration of the Speedy Trial Act and on the administration of justice.  As identified in Williams, on this factor, defendants typically argue that a without prejudice dismissal takes the teeth out of the Speedy Trial Act while the government argues that reprosecution furthers the public interest in bringing criminals to trial.  The Court has weighed these two arguments and considers the fact that the delay is not egregious and there is no apparent prejudice to the defendants.  So finding, the Court recognizes that delays stemmed from repeated defense motions to continue.  Thus, balancing the factors, the Court finds that the dismissal without prejudice is appropriate.  For the foregoing reasons, the Court finds that dismissal without prejudice is appropriate.

(Id.)  The Court incorporates by reference this previous order.  On

the reasoning provided in that order, the Court finds that the Court did not err in dismissing without prejudice the indictment in case 3:05-cr-105-J-33MCR.

**B.  Double Jeopardy**

Brown argues that it was error for the Court not to dismiss certain counts as violative of Brown's Fifth Amendment right not to be placed in jeopardy twice for the same offense.  As the jury was never sworn in Brown I, jeopardy did not attach.  <u>Gomez v. United States</u>, 490 U.S. 858, 872 (1989)(citing <u>Serfass v. United States</u>, 420 U.S. 377, 388 (1975)("[A] criminal trial does not commence for purposes of the Double Jeopardy Clause until the jury is empaneled and sworn . . . .")).  Therefore, Brown was not twice placed in jeopardy.  Accordingly, the Court did not err in not dismissing certain counts as violative of the Fifth Amendment's double jeopardy clause.

**C.  Reference to Restriction from RCB Medical Clinic and Previously Licensed Physician**

Brown argues that it was error for the Court to allow the government to refer to the fact that Brown was prohibited from the RCB Medical Clinic's premises during office hours.  Brown also claims the Court erred in permitting the government to admit evidence that Brown was previously a licensed physician.  Lastly, Brown contends the Court erred in allowing the government to refer to Brown as Dr. Brown.

Brown raised each of these arguments in pre-trial motions. The Court entered written orders on each motion.  (Doc. #83; ##226

4

and 227, 3:05-cr-105).  In each order, the Court conducted a Federal Rule of Evidence 403 balancing test.  As to each issue, the Court found that the probative value of the evidence was not substantially outweighed by the prejudicial effect.  Brown raises no new arguments.  Therefore, for the reasons asserted in its previous orders, the Court finds that the Court did not err in allowing the government to admit the above-referenced evidence.

**D.  Cross-examination of Dr. Beaman and Dr. Wood**

Brown argues that the Court erred in granting the government's motions requesting that Brown be precluded from cross-examining Dr. Beaman and Dr. Wood on certain matters.  The Court entered written orders on both motions.  (Doc. #187 and S-9, 3:05-cr-105).  The Court incorporates those orders by reference.  In the orders, the Court weighed the probative versus prejudicial effect of permitting cross-examination on the disputed matters.  So doing, the Court concluded that the probative value of the desired cross-examination was substantially outweighed by its prejudicial effect.  Brown raises no new arguments.  Therefore, for the reasons asserted in its previous orders, the Court finds that the Court did not err in precluding cross-examination on the disputed matters.

**E. Admission of Exhibits and Overruling Objections**

Brown argues that "[t]he Court erred in overruling the Defendant's objections to the admission of certain Government exhibits at trial and in overruling the Defendant's objection to certain testimony of Government witnesses." (Doc. #136 at 2.)  In response, the government contends that Brown's arguments are too

5

vague to allow a response.  The Court agrees.  Indeed, Brown's arguments are too vague to allow for a meaningful analysis.  Brown claims error.  However, Brown has failed to identify any specific error in the Court's rulings.  The Court has reexamined its previous rulings and finds that no such error was committed.

**F.  Omission of Jury Instructions**

Brown argues that the Court erred in denying Brown's jury instruction regarding multiple conspiracies.  "To prove [the district court's decision not to include a jury instruction] constituted reversible error, a defendant must show [inter alia] that the instruction . . . was not adequately covered in the instructions given to the jury . . . ."  United States v. Arias-Izquierdo, 449 F.3d 1168, 1185 (11th Cir. 2006)(quotation and citation omitted).  The Court gave several conspiracy jury instructions, including jury instruction #15 (Multiple Objects, Eleventh Circuit Pattern 13.2).  These jury instructions, particularly instruction #15, adequately instructed the jury regarding the charged conspiracy.  Thus, the Court properly denied Brown's multiple conspiracy jury instruction.

**G. Improper Jury Instructions**

Brown argues that the Court erred in giving the jury instructions respecting motive, deliberate ignorance, conjunctive charging permitting disjunctive verdict and forfeiture issues.  The Court disagrees.  Jury instructions are reviewed "de novo to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party."  Palmer v. Bd. of Regents of the

Univ. Sys. of Ga. Kennesaw State Coll., 208 F.3d 969, 973 (11th Cir. 2000)(citing United States v. Chandler, 996 F.2d 1073, 1085 (11th Cir. 1993)).  At trial, with the exception of some language in the forfeiture instructions, Brown did not argue that the above-referenced instructions misstated the law.  Rather, Brown argued that the instructions prejudiced him.  During the charge conference, the Court explained the relevance of the jury instructions.

As to the motive instruction, the Court adopted the government's reasoning.  The government explained that the instruction was necessary, as Hunter had identified her bleak financial condition as evidence that she did not participate in the conspiracy.  As such, the government argued that the instruction was necessary to establish that Hunter's motive did not have to be financial in nature.  Based on this reasoning, the Court finds that the Court did not err in submitting the motive instruction to the jury.

As to the conjunction instruction, Brown argued that a similar instruction was already included in another jury instruction.  As such, Brown argued that the directive was overemphasized, to Brown's prejudice.  In allowing the instruction, the Court explained that the separate conjunctive charges served different purposes.  The initial conjunctive charge provided instruction regarding the substantive offenses charged in the indictment, while the second conjunctive instruction applied to the conspiracy charges.  Thus, each directive served a separate function.

7

Accordingly, the separate directives did not overemphasize a particular mandate so as to prejudice Brown.

As to the deliberate ignorance instruction, the Court found that the instruction was necessary in light of the evidence presented against Hunter. The government introduced evidence that the RCB Medical Clinic was billing patients' insurance companies for an inordinate number of procedures. The government argued that a reasonable individual in Hunter's position would have questioned this billing practice. Accordingly, the government contended that, at the very least, Hunter was deliberately ignorant as to the fraudulent billing. The Court accepted and adopted these arguments. Based on the foregoing, the Court did not err by including the deliberate ignorance jury instruction.

Lastly, as to the forfeiture instructions, Brown made several arguments. Brown claimed, generally, that the instructions should have provided for the forfeiture of net, not gross, proceeds. Brown also objected to all or parts of jury instructions #2, #4 and #5. Those instructions provided as follows:

JURY INSTRUCTION NO.2
Forfeiture Proceedings

Under federal law, any person who is convicted of a federal health care offense, a false statement offense, and/or a mail fraud offense, or a conspiracy to commit such offense, is required to forfeit to the United States any property, real or personal, which constitutes or is derived from gross proceeds traceable to the commission of the offense, whether or not that property has been or can be seized by the government. Thus, the government is entitled to a personal money judgment against the defendant for an amount equal to the value of the property that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the

8

commission of the offense. Regarding a count for which the government requests a money judgment, it is your duty to determine whether it is more likely than not that the amount that the government asserts constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense. I instruct you that in considering your forfeiture verdict(s), you may not consider the degree to which a particular defendant was involved in the offense, because by law each defendant is individually liable for the entire amount of the money judgment.

JURY INSTRUCTION NO.4
Forfeiture Proceedings

I further instruct you that what happens to any property that is declared forfeited is exclusively a matter for the Court to decide. You should not consider what might happen to the property in determining whether the property is subject to forfeiture. In this connection, you should disregard any claims that other persons may have to the property. The interests that other persons may have in the property will be taken into account by the Court at a later time. Similarly, any claims that the forfeiture of the property would constitute excessive punishment will be taken into account by the Court at a later time.

Your sole concern now is to determine whether property constitutes or is derived from proceeds traceable to the health care fraud, false statements, and/or mail fraud violations, or a conspiracy to commit such violations, which you have found the defendant(s) committed.

Similarly, you are not to consider whether the property is presently available. That matter also will be considered solely by the Court in imposing sentence.

JURY INSTRUCTION NO.5
Forfeiture Proceedings

Each special verdict form lists the property which the government asserts constitutes or is derived from proceeds traceable to each violation.

You may answer by simply putting an "X" or check mark in the space provided next to the words "YES" or "NO". In some cases, if you answer "NO", there is a followup question you must answer. The foreperson must

then sign and date the special verdict forms.

You will see that some special verdict forms ask you to consider separately whether certain properties are subject to forfeiture on more than one basis. Even if you find that any given property is in fact subject to forfeiture for more than one reason, that does not mean that the government will receive forfeited property twice. It is important, however, that you indicate on the special verdict form all bases on which you find any given property subject to forfeiture. Any issue of double-counting will be considered by the Court in imposing sentence.

(Doc. #125 at 4,6, and 8.)  As to jury instruction #2, Brown argued that the personal money judgment issue was beyond the scope of a forfeiture proceeding.  Brown argued that the jury's function is limited to determining whether there is a nexus between the property at issue and the offense.  The government contended that the instruction provided clarity regarding the interplay between the personal money judgment and the forfeiture property. Specifically, the government argued that the instruction clarifies for the jury that the government is entitled to a personal money judgment equivalent to the value of the property that constitutes or was derived from proceeds traceable to the offense, whether or not the subject property has been or can be seized.  The Court agreed.  Brown provides no new arguments.  Accordingly, the Court upholds its earlier ruling.

Arguing against jury instruction #4, Brown contended, _inter alia_, that the interest others may have in the subject property was not an issue properly before the jury.  Rather, Brown argues that others' interest in the property is a matter reserved for an

10

ancillary proceeding.  The government did not disagree.  However, the government argued that the jury is likely unaware that such an ancillary proceeding is held.  As such, the government argued that the jury may be hesitant to forfeit property held in another person's name.  The government argued that jury instruction #4 provided clarity on this point, as it informs the jurors that the interests other persons may have in the property will be taken into account by the Court at a later time.  As such, the government argued that the instruction clears up any possible misconception. The Court agreed with this reasoning.  Brown provides no new arguments.  As such, for the foregoing reasons, the Court finds that it did not err in submitting jury instruction #4.

Brown also argued that jury instruction #5 was inappropriate. Brown argued that the instruction cited a special verdict form that permitted the jury to indicate whether certain property was subject to forfeiture on more than one basis, but that no such special verdict form existed.  The government disagreed, arguing that the proposed verdict form sought forfeiture on more than one basis: the conspiracy count and the substantive counts.  The Court agreed. Brown presents no new arguments.  As such, the Court finds that it did not err in submitting jury instruction #5 to the jury.

Addressing Brown's arguments advocating the use of net proceeds language, the Court cited 18 U.S.C. § 982(a)(7), which states in relevant part, "[t]he court, in imposing sentence on a person convicted of a Federal health care offense, shall order the person to forfeit property, real or personal, that constitutes or

is derived, directly or indirectly, from <u>gross proceeds</u> traceable to the commission of the offense." (emphasis added).   So identifying, the Court found that the applicable statute clearly permits the forfeiture of gross proceeds.   Brown raises no new arguments.   As such, the Court finds that it was not error to use the gross proceeds language.

For the foregoing reasons, the Court finds that, in allowing the above-referenced instructions, the Court aided, rather than misled the jury.   Accordingly, the Court finds that, contrary to Brown's arguments, the Court did not err.

### H.  Motion for Severance and Mistrial

Brown argues that the Court erred in denying Brown's motions for severance and mistrial, made during Hunter's testimony.   At trial, Brown argued that <u>Bruton v. United States</u>, 391 U.S. 123 (1968), mandated a mistrial.   In the alternative, Brown requested severance.   Justifying the request for severance, Brown argued that the form of a government question during the government's cross-examination of Hunter served as a comment on Brown's right to remain silent.   Both arguments fail.

Hunter testified at trial.   Hence, Hunter was available for cross examination.   <u>James v. United States</u>, 416 F.2d 467 (5th Cir. 1969)(affirming conviction over a <u>Bruton</u> objection where co-defendant took the stand and was subject to cross-examination).   As such, there was no <u>Bruton</u> violation.   Moreover, the form of the government's question did not amount to an interference with Brown's right not to testify.   Accordingly, the Court did not err

in denying Brown's motions for severance and mistrial.

### I.   Motions for Judgment of Acquittal

Brown argues that the Court erred in denying Brown's motions for judgment of acquittal.  As explained below, Penny Thomas's testimony alone provided sufficient evidence to warrant a denial of Brown's motions for judgment of acquittal.  Accordingly, the Court did not err in denying Brown's motions for judgment of acquittal.

### J.   Rebuttal Testimony

Brown argues that the Court improperly allowed the government to present rebuttal testimony.  Brown argues that the testimony was not proper rebuttal testimony.  Rather, Brown contends that the testimony constituted the government being permitted to reopen its case-in-chief after the government rested.  Brown's argument is vague, failing to identify any specific instances of improper rebuttal.  Thus, the Court is left to respond generally.

"[T]he purpose of rebuttal evidence is 'to explain, repel, counteract, or disprove the evidence of the adverse party,' and the decision to permit rebuttal testimony is one that resides in the sound discretion of the trial judge." United States v. Frazier, 387 F.3d 1244, 1269 (11th Cir. 2005)(quoting United States v. Gold, 743 F.2d 800, 818 (11th Cir. 1984)). Using its discretion, the Court finds that the rebuttal testimony satisfied the intended purpose of such testimony.  As such, the Court did not err in permitting the government to present rebuttal testimony.

### K.   Failure to Strike a Juror

Brown argues that the Court erred in failing to excuse juror

13

Woskowicz for cause.  Brown claims juror Woskowicz should have been excused after juror Woskowicz disclosed his prior relationship with Dr. Wood, a government witness.

In <u>McDonough Power Equipment, Inc. v. Greenwood</u>, the Supreme Court provided:

> To obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

464 U.S. 548, 556 (1984).  During voir dire, the Court read the witness list to the venire, which included Dr. Wood.  The Court then asked if any member of the venire was acquainted with any of the witnesses.  Juror Woskowicz did not volunteer his acquaintance with Dr. Wood.  However, this failure to respond was not untruthful.  At the time the question was asked, juror Woskowicz did not recall his previous acquaintance with Dr. Wood.  It was not until Dr. Wood re-introduced himself in the hallway outside the courtroom, subsequent to voir dire, that juror Woskowicz recollected the previous relationship.  Immediately thereafter, juror Woskowicz advised the Court of the connection.

The Court questioned juror Woskowicz regarding the acquaintanceship.  Juror Woskowicz informed the Court that the last time juror Woskowicz saw Dr. Wood was about fifteen years ago.  The Court asked juror Woskowicz whether the connection to Dr. Wood would effect his impartiality.  Juror Woskowicz said that it would

14

not.   Accordingly, juror Woskowicz was not untruthful and his connection to Dr. Wood did not effect his impartiality.   Thus, the Court did not err in refusing to excuse juror Woskowicz.

### L.   Judicial Notice

Brown argues that the Court erred in taking judicial notice that Brown was barred from the RCB Medical Clinic during business hours.   This issue was the subject of a pre-trial order (Doc. #87).   The Court incorporates by reference its previous order.   In that order, the Court found that Brown's restriction from the RCB Medical Clinic's premises was not subject to reasonable dispute and capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.   Thus, the Court found, pursuant to Federal Rule of Evidence 201(b), that Brown's restriction was properly subject to judicial notice.   Fed. R. Evid. 201(b)("[a] judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.")   The Court further found that evidence of the restriction passed a Rule 403 balancing test.   Brown raises no additional arguments.   Therefore, for the reasons asserted in its order, the Court finds that the Court did not err in taking judicial notice of Brown's restriction from the RCB Medical Clinic.

### M.   Presentence Investigation Report

Brown argues that the Court erred in denying Brown's motion for access to the presentence investigation report on Penny Thomas. The Court entered a written order on Brown's motion.   The Court

15

incorporates by reference its order (Doc. #224, 3:05-cr-105).  In that order, the Court found that the applicable standard is the compelling need test.  United States v. Gomez, 323 F.3d 1305, 1308 (11th Cir. 2003).  That is, a third party requesting a presentence investigation report must demonstrate a "compelling, particularized need for disclosure."  Id. (quoting United States v. Corbitt, 879 F.2d 224, 239 (7th Cir. 1989)).  The Court found that Brown did not establish a compelling need.  Brown raises no new arguments. Therefore, for the reasons stated in the Court's order, the Court finds that the Court did not err in denying Brown's request for the presentence investigation report on Thomas.

**N.  Financial Affidavit**

Brown argues that the Court erred in denying Brown access to Penny Thomas's financial affidavit.  Brown subpoenaed the Clerk's office for Thomas's financial affidavit.  In response, the deputy general counsel for the Administrative Office of the United States Courts sent a letter to Brown explaining that there are certain procedures that must be followed to obtain the financial affidavit. The administrative office further provided that Brown had not followed those procedures.  Therefore, the administrative office denied Brown's request.  For the reasons stated in the letter, the Court denied Brown's request for the financial affidavit.  Brown raises no new arguments.  As such, for the reasons stated, the Court finds that the Court did not err in denying Brown's request for Thomas's financial affidavit.

**O. Peremptory Challenge**

16

Brown argues that the Court erred in overruling Brown's objection to the government's peremptory challenge of an African-American member of the venire.  Brown argues that the peremptory challenge violated <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986).  The Court disagrees.

In order to overcome a properly made <u>Batson</u> objection, the government must provide "a neutral explanation related to the particular case to be tried." <u>United States v. Alston</u>, 895 F.2d 1362, 1366 (11th Cir. 1990)(quoting <u>Batson</u>, 476 U.S. at 98).  The explanation must be a clear and reasonably specific explanation of the government's legitimate reasons for exercising the peremptory challenge.  <u>Id.</u> (quoting <u>Batson</u>, 476 U.S. at 98 n.20).  The trial court is afforded discretion in determining the legitimacy of the proffered reasons.  In <u>Batson</u>, the Supreme Court provided:

> "[A] finding of intentional discrimination is a finding of fact" entitled to appropriate deference by a reviewing court.  [Citation omitted.]  Since the trial judge's finding in the context under consideration here [i.e., in determining whether the prosecutor purposefully discriminated in exercising peremptories] largely will turn on an evaluation of credibility, a reviewing court ordinarily should give those findings great deference. [Citation omitted.]

<u>Id.</u> (quoting <u>Batson</u>, 476 U.S. at 98 n.21)(brackets in original).

Assessing the proffered reasons and evaluating the government's credibility, the Court found that the government had offered credible, race neutral reasons for the exercise of the subject peremptory challenge.  The government identified that the venire member's brother and sister had both been arrested, indicating a possible hostility to the government.  Additionally,

the government noted that the venire member was employed in health care.  The government indicated that, in health care fraud cases, the government typically strikes health care workers, as they might be overly sympathetic.

The Court extensively questioned the government, to assure that the proffered rationales for the challenge were not pretextual.  In response, in addition to proffering the above noted race neutral motivations, the government noted that it intended to strike other, non-African-American members of the venire for the same proffered reasons.  In fact, to clearly establish that their use of the peremptory challenge was not racially motivated, the government offered to allow the Court to review, in camera, its other planned strikes of venire members, all of whom were white, whose relatives or who themselves have had negative experiences with law enforcement.  Taken together, the Court found that the government more than satisfied its burden to present proper, non-pretextual reasons for exercising the peremptory challenge.  For the foregoing reasons, the Court finds that the Court did not err in permitting the government to exercise the peremptory challenge.

**P.  Plea Agreement**

Brown argues that the Court erred in denying Brown's motion to preclude admission of Thomas's plea agreement.  The Court entered a written order on the motion (Doc. #225, 3:05-cr-105).  In that order, the Court provided:

> It is well-established that it is improper to use evidence of one person's guilty plea to establish the guilt of another. <u>United States v. DeLoach</u>, 34 F.3d 1001,

18

> 1004 (11th Cir. 1994).  However, proper purposes exist
> for the admission of evidence regarding a plea agreement.
> Id.  Such proper purposes include: (1) evincing witness
> credibility; (2) bracing for cross-examination; (3)
> preventing the jury from thinking that the witness
> escaped liability for culpable behavior.  Id.  Applying
> the Federal Rule of Evidence 403 balancing test, the
> Court finds that evidence of Thomas's plea agreement is
> probative of the above noted factors, and the probative
> value is not substantially outweighed by the prejudicial
> effect.

(Id. at 1-2).  Brown raises no new arguments.  Accordingly, for the reasons stated in the order, the Court finds that the Court did not err in permitting the admission of Thomas's plea agreement.

### Q. Reference to Brown as a Previously Licensed Physician

Brown argues the Court erred in permitting the government to admit evidence that Brown was previously a licensed physician.  The Court has already addressed this argument.  See supra paragraph C.

### R. Government Exhibits 24 and 25

Brown argues that the Court erred in denying Brown's motion in limine to exclude government exhibits 24 and 25.  Brown made multiple arguments, including the following: the exhibits constituted inadmissible hearsay, the exhibits contained irrelevant material, the exhibits did not survive a Federal Rule of Evidence 403 balancing test, the exhibits contained inadmissible information regarding settlement negotiations, and the exhibits referenced Brown's conviction.  The government agreed with several of Brown's arguments.  Accordingly, the government agreed to redact the exhibits, excluding material that was inadmissible, irrelevant, or unfairly prejudicial.

19

In a written order, the Court found that the redactions mitigated Brown's concerns. (Doc. #84.) Addressing Brown's hearsay arguments, The Court found that the exhibits fell within the business records exception to the hearsay rule. In light of this finding and the government's redactions, the Court denied Brown's motion. The Court incorporates by reference its order. Brown raises no new arguments. As such, for the reasons stated in the Court's earlier order, the Court finds that the Court did not err in allowing the government to admit exhibits 24 and 25.

**S. Pretrial Motion for Severance**

Brown argues the Court erred in denying Brown's pretrial motion for severance and relief from prejudicial order. The Court entered a written order on Brown's motion. (Doc. #82). In pertinent part, the Court provided:

> Brown argues that the government intends to offer evidence that would be inadmissible against Brown, absent Hunter testifying at trial. Specifically, Brown references statements that Hunter made in an FBI interview. Brown asserts that the statements may require Brown, if Hunter does not testify, to identify the fact that Hunter did not testify. Brown also points out that Hunter intends to utilize handwritten statements that inculpate Brown. Brown argues that the use of these statements would constitute a violation of the Supreme Court's mandate in Bruton v. United States, 391 U.S. 123 (1968).

> In response, the government asserts that the government will not use Hunter's statements to the FBI unless Hunter testifies. Moreover, today, the Court entered an order precluding Hunter from admitting the subject handwritten statements or referencing the factual substance of the handwritten statements. As such, Brown's arguments in support of the severance are mooted. In addition, the Court notes that the motion was not filed until the eve of trial. See United States v. Johnson, 713 F.2d 633, 641 (11th Cir. 1983)(giving weight

to the "timeliness of the motion.").

(Id.)  Brown raises no new arguments.  Therefore, for the reasons stated in the Court's order, the Court finds that the Court did not err in denying Brown's motion for severance and prejudicial joinder.

## 2. Weight of the Evidence

In addition to Court error, Brown also claims that the evidence was manifestly insufficient to support the jury's verdict. To this, the Court identifies the testimony of Penny Thomas, an unindicted co-conspirator.  Thomas testified that she assisted Hunter and Brown in a scheme to defraud certain insurance companies, as charged in the indictment.

"[U]ncorroborated testimony of an accomplice may be enough to support a conviction if the testimony is not on its face incredible or otherwise insubstantial."  United States v. Garcia , 405 F.3d 1260, 1270 (11th Cir. 2005)(citing United States v. Butler, 792 F.2d 1528, 1536 (11th Cir. 1986)).  Brown does not claim that Thomas's testimony is insubstantial.  Rather, at trial, Brown attacked Thomas's credibility.  However, credibility determinations are the jury's province, not the Court's, unless the testimony is "unbelievable on its face."  Id. (citing United States v. Rivera, 775 F.2d 1559, 1561 (11th Cir. 1985)).  Testimony is unbelievable on its face if it was physically impossible for the witness to have observed the event or the event could not have occurred under the laws of nature.  Rivera, 775 F.2d at 1561.  Thomas's testimony does not fit into either of these categories.  As such, Thomas's

testimony alone is sufficient to sustain the jury's verdict.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Robert Brown's Motion for New Trial (Doc. #136) is **DENIED**.

**DONE** and **ORDERED** at Jacksonville, Florida, this 13th day of February, 2007.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record