UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT C. BROWN,

v.  Case No. 3:05-cr-105-J-33MCR
3:06-cr-204-J-33MCR
3:09-cv-896-J-33MCR

UNITED STATES OF AMERICA.

_____

**O R D E R**

This cause is before the court on Robert C. Brown's timely-filed pro se Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. §2255 (hereinafter "motion to vacate") (Doc. cv-1; cr-294 in case no. 3:06-cr-204-J-33MCR). A review of the record demonstrates that, for the following reasons, the motion to vacate must be **DENIED**.

**PROCEDURAL HISTORY**

On April 14, 2005, Brown and another individual, Laurette Hunter, were named in a thirty-nine count Indictment charging one count of conspiracy to defraud the United States, in violation of 18 U.S.C. §371; twelve counts of health care benefit fraud, in violation of 18 U.S.C. §§ 1347 and 2; twelve counts of making false statements or representations in relation to the delivery and payment for health care benefits, items and services, in violation of 18 U.S.C. §§ 1305 and 2; and four counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 2. See Case Number 3:05-cr-105-J-33MCR (Brown I, Doc. 1).[1] Brown was

---

[1] The docket numbers cited refer to the first criminal docket in the underlying related criminal case United States of America v. Robert C. Brown and Laurette C.Hunter, Case No. 3:05-cr-105-J-33MCR (hereinafter referred to as "Brown I"). The subsequent case is identically styled and filed under Case No. 3:06-cr-204-J-33MCR (hereinafter referred to as "Brown II"). Both cases are incorporated herein by reference as part of the complete record of this case.

also charged in this Indictment with ten counts of money laundering, in violation of 18 U.S.C. §1956, and forfeiture provisions were included. *(Id).*

On April 25, 2006, a Superseding Indictment was returned, maintaining the conspiracy and mail fraud charges, reducing the number of healthcare fraud and fraudulent statement charges, and eliminating the financial transaction charges. *(Id.,* Doc. 101). On June 20, 2006, Brown moved to dismiss the case for speedy trial violations. (*Id.,* Doc. 168). Ultimately, although the government disputed the excludable time calculated by Brown, it agreed that dismissal was appropriate and moved to dismiss the case without prejudice. (*Id.,* Doc. 228, 230-31).

On June 29, 2006, the grand jury returned a new Indictment that mirrored the Superseding Indictment in the original case. *See* Case Number 3:06-cr-204-J-33MCR. The Court denied the defendants' motions to dismiss the new case (Brown II) on double jeopardy and prejudice grounds, and the case proceeded to an eight-day jury trial. (*See* Brown II, Doc. 40; 178 at pp. 2-4). On August 22, 2006, Brown was found guilty on all counts. (Brown II, Doc. 128).

On February 13, 2007, the Court denied the defendants' motion for new trial. (Brown II, Doc. 178). On February 22, 2007, Brown was sentenced to ninety-nine months' imprisonment. (Brown II, Doc. 195). On February 27, 2007, Brown filed a timely Notice of Appeal. (Brown II, Doc. 199).

**SUMMARY OF ISSUES ON DIRECT APPEAL**

Brown and Laurette Hunter's timely Notices of Appeal were joined. Both defendants challenged rulings made by the District Court on multiple issues, specifically:

1. Whether the speedy trial act violation requires reversal and dismissal with prejudice;

2. Whether the District Court violated the defendant's constitutional right to confront and cross-examine witnesses against him;

3. Whether the District Court's order denying the defendant's motions for disclosure of a Presentence Investigation Report (PSR) and financial affidavit of a government witness violated the defendant's rights to due process, compulsory process and confrontation;

4. Whether the District Court erred in taking judicial notice, placing undue emphasis on matters judicially noticed by repetition of judicial notice instructions;

5. Whether the jury was incorrectly and prejudicially instructed on deliberate indifference and motive;

6. Whether the District Court erroneously denied the defendant's motion to dismiss for double jeopardy violations.

Co-defendant Laurette C. Hunter also alleged that the trial court abused its discretion by limiting evidence of her finances, and erred by failing to declare a mistrial sua sponte based on the prosecutor's alleged "vouching." After extensive briefing, the Eleventh Circuit denied each claim in an unpublished per curiam opinion. The United States Court of Appeal for the Eleventh Circuit Court affirmed the convictions and sentences of both defendants. *See United States v. Hunter*, 319 Fed. Appx. 758, 2008 WL 4291324 (11th Cir., Sept. 22, 2008). On March 23, 2009, Brown filed a petition for writ of certiorari in the Supreme Court. The petition was denied April 20, 2009. This timely filed 28 U.S.C. § 2255 motion to vacate followed.

**PROCEDURAL DEFAULT AND ISSUES PREVIOUSLY DECIDED**

Brown raises ten grounds for relief in the present motion to vacate. Two of the ten have been previously raised and rejected: a) that the trial court abused its discretion in limiting the cross examination of certain witnesses (Ground Two); and, b) whether double jeopardy occurred (Ground Four). Both claims were litigated in the District Court and subsequently raised on appeal. Both were decided against Brown; therefore, further review

3

is precluded. "Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (quoting *United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977)); *see also Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (section 2255 motion is "neither a recapitulation of nor a substitute" for direct appeal; absent changed circumstances of fact or law, court will not reconsider an issue already decided on direct appeal).

## CLAIMS OF NEWLY DISCOVERED EVIDENCE

Brown also relies on alleged newly discovered evidence which he claims is exculpatory, but does not identify or otherwise describe the evidence. He first asserts that the grand jury proceedings were suspect largely because a different grand jury returned the Superseding Indictment, and that the grand jurors were not qualified to "properly evaluate the need for specialized repeated and continuous medical care." *See Ground Eight* (Brown's motion to vacate at p. 33). Second, he claims that new evidence "will be presented. . .in the form of documents and testimony by expert witnesses." *See Ground Nine* (Brown's motion to vacate at p. 34). He contends that he can now provide experts to prove that government witnesses Penny Thomas and Dr. Richard Wood committed perjury and obstruction of justice at trial. Brown fails to substantiate these claims, and fails to mention why he did not locate these experts and present this evidence and/or testimony at trial. He presumes the outcome of trial would have been different if the jury had been allowed to consider this evidence; however, this presumption is speculative at best, and speculative claims do not warrant review.

**1. Challenge to the Grand Jury (Ground Eight)**

Initially, the defense challenged the return of the Superseding Indictment, moving for disclosure of grand jury transcripts and dismissal of the Superseding Indictment for prosecutorial misconduct before the grand jury, asserting irregularities in the return of the Superseding Indictment, which was returned by a second, separate grand jury. (See Brown II, Doc. 94; Brown II, Doc. 212 [trial transcript] at 154-57). The Court denied this motion, finding that Brown had "failed to establish a particularized need for the [grand jury] transcripts." (*Id.*, Doc. 159). Brown now asserts that the grand jury lacked the necessary knowledge to determine the need for "specialized repeated and continuous medical care"; challenges the "systematic exclusion of black jurors with health care related backgrounds"; cites fictional "high media exposure"; and claims that false testimony was presented to the grand jury. (Brown's motion to vacate at p.18). These claims either have been previously rejected, or are merely speculative in nature.

The fair cross-section requirement of the Sixth Amendment applies to the selection of grand juries. *United States v. Pepe*, 747 F.2d 632 (11th Cir. 1984). In order to establish that the selection of the grand jury violates this Sixth Amendment right, or the Fourteenth Amendment right to equal protection, a defendant must show: (1) the group discriminated against must be one that is a distinct class in society; (2) the group must be substantially under-represented in the grand jury venires over a significant period of time, and (3) the selection procedure is not racially neutral or is susceptible to abuse as a tool of discrimination. *Alexander v. Louisiana*, 405 U.S. 625 (1972); *Dobbs v. Kemp*, 809 F.2d 750 (11th Cir. 1987).

Brown merely promises that he can substantiate his claims through his own testimony as well as through unidentified "newly discovered evidence." The promise of

5

self-serving testimony and documentation to challenge the fair cross-section of the grand jury is insufficient to satisfy the requirements for review. Importantly, it is not necessary for any grand juror to be an African-American with a knowledge of certain health-related issues in order to find that Brown knowingly engaged in criminally fraudulent billing procedures. Interestingly, Brown does not complain that the trial jury lacked these qualifications. This claim is meritless.

### 2. "New Discovered" Expert Testimony.

Brown asserts that he can only now provide expert evidence that two of the government's witnesses, Penny Thomas and Dr. Richard Wood, committed perjury and obstructed justice at trial. Again, Brown does not explain why he did not seek expert testimony at the appropriate time, that is, prior to trial. Brown has not stated the nature or origin of this evidence, or how it would have fatally impeached the testimony of these witnesses, exculpated Brown, or otherwise negated the trial jury's verdict.

Prior to trial, Brown knew that the government was going to call Penny Thomas and Dr. Wood as witnesses. The defense objected strenuously prior to trial about the substance of their testimony. The defense strongly objected to the limitations imposed on the testimony provided by Dr. Wood (see Brown I, Docs. 187, 205, 223; Brown II, Doc. 178 at 5; Doc. 238 at 18), and moved repeatedly for additional information with which to impeach Penny Thomas. (Brown I, Doc. 123; Doc. 211 at 132-33, 151).

Brown, a medical doctor, was aided at trial by two attorneys, joined by Laurette Hunter and her counsel. Apparently they were unable to locate any experts or present any evidence like that which Brown seeks to introduce now, or they made a strategic decision not to do so. Brown does not explain his reason for failing to seek out experts at the

6

appropriate time, nor does he indicate the substance of the alleged "newly discovered" expert testimony. Again, Brown has merely promised to produce evidence that will undermine the outcome of the trial. Without more, this claim is meritless.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Brown seeks review of his conviction, claiming that he was denied his Sixth Amendment right to effective assistance of counsel. Ineffective assistance of counsel claims are generally reviewable only on collateral attack, pursuant to 28 U.S.C. § 2255. *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994). Ineffective assistance of counsel excuses a defendant's failure to raise other claims, if the ineffective assistance of counsel is the cause of the failure to raise the omitted claim. *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989).

**1. Ineffective Assistance of Counsel - Generally**

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To prevail on a claim of ineffective assistance of counsel, a defendant must meet the two prongs established by *Strickland v. Washington*, 466 U.S. 668 (1984). That is, the defendant must show (1) that his counsel's representation was deficient, and (2) that this deficient representation prejudiced him. *Strickland v. Washington*, 466 U.S. at 687; *see also Baxter v. Thomas*, 45 F.3d 1501, 1512 (11th Cir. 1995). A court need not address both components of the inquiry if the defendant makes an insufficient showing on one component. *Id.; see also Weeks v. Jones*, 26 F.3d 1030,1037 (11th Cir. 1994).

In determining whether the first portion of the test has been met, the proper standard is "reasonably effective assistance[,]" or "whether counsel's representation fell below an

objective standard of reasonableness." *Weeks v. Jones*, 26 F.3d at 1036. Application of this standard requires that judicial scrutiny of counsel's performance be highly deferential; a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* Even if the court finds some deficiency in the performance of counsel, a defendant is not entitled to relief on ineffective assistance grounds unless the second prong of the Strickland test is met. *United States v. Hilliard*, 752 F.2d 578, 580 (11th Cir. 1985). Under the second prong, a defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* When a defendant fails to make a sufficient showing of prejudice, the Court need not address the adequacy of counsel's performance. *Strickland*, 466 U.S. at 697; *Tafero v. Wainwright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

Finally, every effort must be made to reconstruct the circumstances of counsel's challenged conduct, to evaluate the conduct from counsel's perspective at the time, and to eliminate the distorting effects of hindsight. *Weeks v. Jones*, 26 F.3d at 1036; *Diaz v. United States*, 930 F.2d 832 (11th Cir. 1991). A court must examine the "totality of the circumstances" in determining whether the counsel a defendant received was constitutionally sufficient and effective. *McCoy v. Newsome*, 953 F.2d 1252, 1263 (11th Cir. 1992).

### 2. Specific Claims of Ineffective Assistance

Brown's remaining six claims involve challenges to counsel's representation at trial. Specifically, he claims counsel's performance was constitutionally deficient: (1) on the issue

8

of a speedy trial violation (Ground One); (2) for his failure to discover and object to the government's alleged presentation of false testimony and failure to disclose impeaching evidence (Ground Three); (3) for his failure to obtain early *Jencks* Act material (Ground Five); (4) for his failure to object to alleged "vindictive prosecution" (Ground Six); (5) for his failure to introduce *Brady* material (Ground Seven); and for his failure to object to alleged selective prosecution and misconduct (Ground Ten). Brown fails to support these claims.

### a. Speedy Trial Violation (Ground One)

Brown attempts to relitigate the same issue that was raised on appeal; that is, whether the Court's dismissal of the original Indictment was erroneous. As discussed above, the underlying claim is procedurally barred. Counsel litigated this issue at trial, on appeal, and even sought review in the United States Supreme Court. Brown fails to state how counsel should have argued this issue differently. The mere fact that counsel did not prevail does not constitute ineffective assistance of counsel.

### b. Government's Alleged Presentation of False Testimony and *Brady*[2] Violation (Ground Three).

Brown contends counsel was ineffective for failing to assert an alleged *Brady* violation, and for failing to argue that the government knowingly presented false testimony at trial. Brown's claims are vague and speculative.

First, as to Brown's claim of an alleged *Brady* violation, it appears Brown confuses the exculpatory nature at the heart of the *Brady* holding with impeachment evidence, which it appears Brown believes was withheld prior to trial. This claim seems to be morphed with a claim of alleged perjury, apparently challenging counsel's failure to elicit impeaching

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

testimony concerning alleged promise(s) of leniency extended by the government to witness Penny Thomas. (See Brown's motion to vacate at p. 24). Brown also promises to produce documents to support his motion to vacate that were purportedly created by Dr. Wood, which he claims the government possessed prior to trial, but did not disclose to the defense. He states that he will prove that the government knew Dr. Wood's testimony was false. Brown does not disclose or describe the evidence upon which he relies. Therefore, the Court cannot credit this claim.

Claims not fairly raised will not be entertained on collateral attack. *United States v. Jones*, 614 F.2d 80 (5th Cir. 1980) (conclusory claims); *Walker v. Dugger*, 860 F.2d 1010, 1011 (11th Cir. 1988) (claims raised only superficially). While a pro se litigant may be entitled to liberal construction of his arguments, issues mentioned only superficially will not be treated as properly raised. *Walker v. Dugger*, 860 F.2d at 1011. In other words, vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991). Therefore, Brown's vague claim must be denied.

### c. *Jencks* Act Violation (Ground Five)

Again, Brown makes a veiled attempt to fault counsel for the unsuccessful challenge made prior to trial for the early disclosure of statements pursuant to 18 U.S.C. §3500 (the *Jencks* Act). In his reply to the government's response, Brown clarifies that he is alleging ineffective assistance of counsel when he states "if counsel had acted correctly this material would have been obtained and effectively impeached the credibility of the witnesses required to obtain the conviction." (Doc. cv-10 at p. 3). Brown acknowledges that counsel made such a motion prior to trial. (Brown's motion to vacate at p.15 ¶ (a)). His

current motion does not identify the witness(es) whose statement(s) were allegedly withheld. The record illustrates that counsel made a motion for early disclosure of witness statements prior to trial, and that this motion was denied. (Brown I, Doc. 178 and Doc. 194, respectively). Brown's current claim fails to articulate what more counsel should have done; what argument was left unmade; or what statements counsel failed to obtain "early." This claim was raised and ruled on prior to trial, and is foreclosed from further review, even under the guise of ineffective assistance of counsel.

### d. Claim of Vindictive Prosecution (Ground Six)

Brown continues his promises of forthcoming evidence that will allegedly show that vindictive prosecution was the motivation for the return of the Superseding Indictment. He states superfluous "facts" in support of this claim; for instance, that the nature of the case is non-violent, or that status crimes are "constitutionally suspect." (Brown's motion to vacate at p. 16). Brown claims counsel was ineffective for failing to discover or identify this mystery evidence. This claim, like the others, is too vague to ascertain what Brown's claim is, other than it appears he wants an evidentiary hearing. His mere suggestion of evidence, without more, does not justify collateral review of this claim.

### e. Failure To Introduce *Brady* Material (Ground Seven)

Brown faults counsel for failing to conduct a proper investigation that would have led to an obvious need to procure expert testimony to provide an interpretation of "exculpatory medical records." (Brown's motion to vacate at p. 17). He claims such testimony would have established the government's use of perjured testimony at trial. He also claims that counsel failed to reveal the racial bias of a government witness, as well as a witness who was biased toward the government. Brown fails to state how he can prove such bias, and

11

even fails to identify which witnesses he claims harbored such biases. Brown continues to leave his arguments open-ended in the hope of procuring a hearing at which he will clarify his arguments. Brown is not entitled to a hearing without a more substantial showing of a need for one. His vague, speculative and conclusory allegations do not demand further review.

### f. Failure To Object to Alleged Selective Prosecution and Misconduct (Ground Ten)

Finally, Brown claims counsel was ineffective for failing to assert that Brown was selectively prosecuted, and that prosecutorial misconduct violated his constitutional right to due process. In support, he claims that others (who remain unidentified) who were similarly situated in "almost identical cases" were settled administratively, and that his prosecution was racially biased. These vague allegations are all he states in his motion to vacate. Brown does not even suggest what counsel should have done differently. In fact, Brown fails to mention counsel's performance at all in his motion to vacate, other than to cite it as cause to raise spurious assertions. Brown's claim is without merit.

Brown has failed to establish any constitutional violation warranting review by this Court. Brown's claims are either procedurally barred or based upon unsupported assertions of newly claimed evidence. Brown has also failed to articulate any prejudice resulting from counsel's performance, and has failed to specify what additional arguments counsel should have made; what specific witnesses counsel should have called; or what evidence counsel should have presented. Brown's motion is wholly unsupported, vague and conclusory.

Accordingly, the Court orders:

That Brown's 28 U.S.C. § 2255 motion to vacate (Doc. cv-1, cr-294) is denied. The

Clerk is directed to enter judgment against Brown in the civil case and to close that case.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances. Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on February 10, 2010.

*[signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

AUSA: Mark Devereaux
Robert C. Brown